IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

STACI L. GALLAGHER,

        Plaintiff,

vs.                                            **Case No. 07-4046-RDR**

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff has filed an application for social security disability benefits. Plaintiff alleges an onset date of February 6, 2001. The application was denied by defendant on the basis of the June 16, 2006 opinion of an administrative law judge (ALJ). This case is now before the court to review defendant's decision to deny benefits.

STANDARD OF REVIEW

The court reviews defendant's decision to determine whether the decision was supported by substantial evidence and whether the correct legal standards were applied. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is such evidence that a reasonable mind might accept to support the conclusion. <u>Rebeck v. Barnhart</u>, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004)(quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). The court must examine the record as a whole, including whatever in the record

fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn, 21 F.3d at 984.

ALJ DECISION (Tr. 15-25).

There is a five-step evaluation process followed in these cases.  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his past relevant work.  Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education, and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth or last step of the evaluation process.  The ALJ decided that plaintiff maintained the residual functional capacity to perform certain types of light or sedentary work which existed in the economy.

More specifically, the ALJ determined that plaintiff has not engaged in substantial gainful activity during the time period relevant to her application for benefits. (Tr. 17). The ALJ found that plaintiff suffers from the following severe impairments: obesity, osteoarthritis, degenerative disc disease and depression. (Tr. 17). The ALJ also determined that plaintiff does not have a single impairment or a combination of impairments which meet or equal one of the listed impairments in the social security regulations. (Tr. 20). The ALJ's findings also reflect that plaintiff has the residual functional capacity (RFC) for simple, routine, repetitive low-stress work, with lifting or carrying less than 5 pounds frequently and 20 pounds occasionally, standing or walking about 20 to 30 minutes at a time for 2 to 3 hours in an 8-hour work day, with the ability to alternate between sit and stand occasionally and occasional limitations regarding bending, stooping, squatting, kneeling and crawling with no vibrations and no cold temperature extremes. (Tr. 21). Finally, based on the testimony of a vocational expert, the ALJ concluded that plaintiff was capable of performing such jobs as an office helper, charge account clerk and fabrication finisher, and that these jobs exist in significant numbers in the national economy. (Tr. 24).

PLAINTIFF'S PERSONAL HISTORY

Plaintiff was born in 1970. She has a high school education. She has prior work experience as a bank teller, a janitor, and a

front line cashier. Plaintiff is married. She has one child. Her husband has been away from the home at times for military duty. Plaintiff has gone on trips to Ireland, Las Vegas, and Kansas City with her family.

PLAINTIFF'S ARGUMENTS

Plaintiff makes three arguments in support of her request to reverse defendant's decision. The court shall only address plaintiff's first argument in detail.

Plaintiff's first contention is that the ALJ improperly weighed the opinions of plaintiff's treating physicians. Plaintiff refers specifically to the opinions of Dr. Klobasa and Dr. Katta.

Dr. Klobasa made the following statement in October 2003:

> I have seen Staci since 6/27/01 to prescribe and monitor medicines and provide brief psychotherapy. My diagnosis is a Major Depression, Single episode. When she presented, it was of a moderate degree. Now it is in remission and has been in remission for some time. I initially started treating Staci with Effexor and discontinued some Celexa she was on. She has responded well to the Effexor. Her current dose is 225 mg a day of Effexor. At this point, Staci is free of symptoms of Major Depression and does not struggle with significant issues with anxiety. She is gradually developing {more} ego {strength} and is not as easily overwhelmed as she was at one point. I do not believe Staci is disabled from work. I believe she could handle a part-time job with minimal stress from a psychological perspective.
>
> In addition to Staci's psychological issues, she has significant medical issues. In particular she is struggling with orthopedic problems that are the result of a motor-vehicle accident. She has chronic pain. It's my impression from just watching her move about, that these injuries and symptoms could be disabling from work. I would ask you to contact her primary care physician and orthopedist for more information about those.

(Tr. 390).

The ALJ's interpretation or characterization of this statement was that: "Dr. Klobasa noted that the claimant had no disability from a psychological perspective, but opined that her alleged physical impairment might limit her to a part-time job with minimal stress. As noted, Dr. Klobasa is a psychiatrist and is not qualified to speak to physical capacity." (Tr. 23). The ALJ also noted that Dr. Klobasa reported that plaintiff's depression was in remission in October 2003. (Tr. 19).

Dr. Katta stated on May 11, 2006 that plaintiff should "avoid any lifting, pulling or pushing of weights more than 5 to 10 pounds, [and] use [a] cane while up and walking. Avoid any activity that irritates the back." (Tr. 701). The ALJ's only comment regarding this statement by Dr. Katta was that it was made the day before the hearing before the ALJ in this case. (Tr. 18 & 23).

The ALJ stated that his conclusions regarding plaintiff's residual functional capacity were in "general agreement" with the opinions of the State agency medical consultants. He commented:

> Although they did not examine the claimant, they provided specific reasons for their opinions about the claimant's residual functional capacity showing that they were grounded in the evidence in the case records, including careful consideration of the claimant's allegations about symptoms and limitations.

(Tr. 23).

The State agency medical consultants reports are at exhibits

13F and 14F in the administrative record. (Tr. 412-438). It should be noted that the report concerning plaintiff's physical limitations finds no limitations in climbing, balancing, stooping, kneeling, crouching or crawling (Tr. 414), even though the medical consultant acknowledged: that plaintiff walked with a limp when not using a cane; that she had painfully limited movement of the lumbar spine as well as bilateral sacroiliac joints; and that she needs help sometimes to get in and out of the bathtub and with putting shoes on. (Tr. 420). The report also finds that plaintiff can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Tr. 413).

The report concerning plaintiff's psychological limitations concluded that plaintiff had a mild degree of limitation in her activities of daily living and mild limitations in maintaining concentration, persistence or pace. (Tr. 433). The consultant also stated:

> The [claimant's] allegations of symptoms do not include any current psychiatric symptoms.
>
> There is a medical opinion in the file by Dr. Klobasa that the [claimant] has been in remission from her Major Depression for some time, and does not struggle with significant issues with anxiety. I do not believe she is disabled from work. I believe she could handle a part-time job with minimal stress from a psychological perspective.

(Tr. 437).

The Tenth Circuit has addressed how the opinions of treating physicians should be considered in <u>Watkins v. Barnhart</u>, 350 F.3d

6

1297, 1300-01 (10th Cir. 2003):

> Under the regulations, the agency rulings, and our case law, an ALJ must "give good reasons in [the] notice of determination or decision" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); see also Social Security Ruling 96-2p, 1996 WL 374188, at *5; Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). Further, the notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. . . .
>
> In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for "controlling weight." An ALJ should keep in mind that "[i]t is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at *2; see also 20 C.F.R. § 404.1527(d)(2).
>
> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188 at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. . . . A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is necessary so that we can properly review the ALJ's determination on appeal.
>
> But resolving the "controlling weight" issue does not end our review. . . . "[Even if not entitled to 'controlling weight',] [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188, at *4. Those factors are:

7

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)(quotation omitted).  After considering the pertinent factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion.  20 C.F.R. § 404.1527(d)(2).  Finally, if the ALJ rejects the opinion completely, he must then give "'specific, legitimate reasons'" for doing so.  See Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

The ALJ in this case did not directly address the question of whether the treating physicians' opinions should receive controlling weight.  Nor did the ALJ express a judgment regarding what weight should be given the opinions and provide good reasons to support that judgment.  Regarding Dr. Klobasa's opinion which apparently limits plaintiff to part-time work, the ALJ considered this an unqualified judgment of plaintiff's physical capacity.  This view does not square with our take on Dr. Klobasa's statement that:  "[Plaintiff] could handle a part-time job with minimal stress from a psychological perspective."  As his words indicate, it appears to the court that Dr. Klobasa was speaking "from a psychological perspective."  Dr. Klobasa did not address

8

plaintiff's physical problems until the paragraph following the above-quoted sentence. Moreover, the nonexamining psychiatric consultant appeared to read Dr. Klobasa's opinion in the same fashion because he repeated Dr. Klobasa's statement regarding part-time work in his comments regarding plaintiff's psychiatric condition. (Tr. 437).

The ALJ does not discuss Dr. Katta's opinion limiting plaintiff to lifting, pulling or pushing 10 pounds. The ALJ adopts a 20-pound limit, which corresponds with the conclusion of the non-examining consulting physician. But, he does not explain why Dr. Katta's opinion does not deserve controlling weight or why the opinion deserves less weight than that of the consulting physician. We acknowledge, however, that the ALJ in his examination of the vocational expert did ask the expert to consider plaintiff's ability to perform a job if she was limited to lifting a "nominal" weight. (See Tr. at 812 & 816). So, the ALJ may have accepted Dr. Katta's weight limitations at least for the purpose of some of his questions to the vocational expert.

Plaintiff further contends that the ALJ did not consider Dr. Katta's opinion that plaintiff should use a cane. We disagree with this contention. The ALJ's questioning of the vocational expert indicates that the use of a cane was factored into the ALJ's analysis of plaintiff's ability to perform substantial gainful employment. (Tr. 816). Thus, he appeared to give controlling

9

weight to the opinion that plaintiff should use a cane.

Defendant argues in this case that Dr. Klobasa's opinion is inconsistent with his statements that plaintiff's depression was in remission. This argument, however, does not make up for the ALJ's failure to follow the protocol for evaluating a treating physician's opinion which is, itself, grounds for reversal and remand. See Wade v. Astrue, 2008 WL 193236 at *1 (10th Cir. 1/23/2008). Secondly, this is an argument not made by the ALJ and this court may not adopt post-hoc rationalizations to support an ALJ's decision that are not apparent from the decision itself. Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Defendant also argues that Dr. Klobasa's opinion regarding part-time work is not a medical opinion but an opinion on the application of the social security statute, which is a task solely for the discretion of the Social Security Commissioner. Again, this does not excuse the ALJ from determining the weight to assess to a treating physician's opinion. Wade, at *2.

Conclusion

The court believes the failure of the ALJ to follow the proper standards in considering the opinions of plaintiff's treating physicians, particularly Dr. Klobasa, warrants a reversal and remand for further proceedings. Therefore, the court will not address the other issues raised in plaintiff's brief. However, the court urges that if on remand this matter reaches step five of the

sequential analysis, the ALJ consider the entirety of plaintiff's impairments, without regard to whether any such impairment, if considered separately, would be considered severe.  See 20 C.F.R. § 404.1523.  The decision of the Commissioner is hereby reversed and this case is remanded for further proceedings consistent with this memorandum and order.  This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 3rd day of April, 2008 at Topeka, Kansas.


                                s/Richard D. Rogers
                                United States District Judge